685 A.2d 923

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
ROOSEVELT GREY, DEFENDANT–APPELLANT.

Argued January 30, 1996—Reargued September
25, 1996—Decided December 11, 1996.

*Mark H. Friedman*, Assistant Deputy Public Defender, argued the cause for appellant (*Susan L. Reisner*, Public Defender, attorney).

*Marcy H. Geraci*, Deputy Attorney General, argued the cause for respondent (*Peter G. Verniero*, Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

O'HERN, J.

Defendant has been convicted of second-degree conspiracy to commit aggravated arson. *N.J.S.A.* 2C:5–2; *N.J.S.A.* 2C:17–1a. The question is whether he may be convicted of felony murder even though acquitted of the underlying felony of aggravated arson. We find that unusual circumstances in the sequence and delivery of the instructions to the jury led the jury to predicate its conviction of felony murder on its conviction of conspiracy to commit aggravated arson. A conviction of felony murder, however, is not permitted on that basis. *N.J.S.A.* 2C:11–3a(3).

**I**

The case arises from a dispute over stolen drugs. From the record, the jury could have found the following facts. Roosevelt Grey (Grey) was a low-level drug dealer who worked in Newark for another Newark dealer named Marvin Jenkins (Jenkins). In late March, 1992, Jenkins supplied Grey with several hundred dollars worth of cocaine for Grey to sell. Grey hid the drugs prior to going out to make "a big sale." A bystander, Jessie Bellinger (Bellinger), saw Grey hide the cocaine.

When Grey returned to his hiding place, he found that the cocaine had disappeared and immediately suspected Bellinger of stealing the cocaine. While looking for Bellinger, Grey met Jenkins and told him that the drugs had disappeared and that he suspected Bellinger of stealing them. Jenkins told Grey to go to the home of Bellinger's mother and to bring Bellinger out of the house before Jenkins "burns the house down."

Bellinger was not there, but Grey threatened Bellinger's mother and sister that if Bellinger did not return the drugs Jenkins would "burn [him] out of [the house]." Grey returned to Jenkins and told him that he could not find Bellinger. Jenkins told Grey that this was not the first time Bellinger had stolen from him, and said that he would "catch" Bellinger.

The following afternoon Jenkins and Grey resumed their search for Bellinger. When they did not find him, the pair separated. At around midnight that night, Grey met Jenkins on the street. Jenkins told Grey that he believed Bellinger was staying at 19 Vanderpool Street, a nearby boarded-up house.

Jenkins then drove a short distance to a corner gas station. From the street, Grey watched Jenkins take a red container from the trunk of his car, fill it with gas, and then put it back in the trunk. Jenkins drove alone to the house in which Bellinger was supposedly staying and parked behind it. Grey joined Jenkins on foot. Jenkins took the container out of his trunk and told Grey to "watch out" and to make sure no one came into the lot behind the

house. Jenkins entered the house, carrying the container that he had filled with gas.

Jenkins was in the house less than ten minutes. Grey remained in the lot keeping watch. Grey saw Jenkins leave the house, but he no longer had the container with him and was rubbing his hands together. Grey thought Jenkins was attempting to get the smell of gas off his hands. Jenkins told Grey that they would meet again later. Jenkins then left in his car.

Grey walked to his mother's house, which is located directly behind 19 Vanderpool Street. He stood on the porch and watched the other house for about three or four minutes until he saw a "big clog of smoke" coming from it. Grey then went to bed.

Newark firefighters, called to the burning house at about two that morning, detected the smell of gasoline upon entering the house. Before the firefighters were able to extinguish the fire, it had completely destroyed the rear parts of the house. They found the bodies of three homeless persons in the house. Investigators concluded that arson was the cause of the fire. Bellinger was not in the house during the fire.

Investigators subsequently learned that someone named "Akbar" had come to the Bellinger home on the night of the fire and had been looking for Bellinger. Six months after the fire, detectives began to search for Grey as being that person.

At first, Grey denied knowing anything about the fire. He later offered to disclose to the police what he knew in exchange for reward money. Grey was taken to the Essex County Prosecutor's Office Arson Unit in East Orange and advised of his *Miranda* rights. Grey told the police that he worked for Jenkins, that Jenkins had started the fire, and that he had served as a lookout during the fire.

In a later written statement, Grey admitted that prior to the fire he knew that Jenkins intended to set fire to the house. Grey said that Jenkins told him that Bellinger would be in the house.

When asked why he acted as Jenkins's lookout, Grey responded that he "was a follower."

An Essex County grand jury charged Grey and Jenkins each with one count of second-degree conspiracy to commit aggravated arson (the burning of an occupied structure or building); one count of second-degree aggravated arson; three counts of murder; three counts of felony murder; and one count of third-degree terroristic threats.

Grey and Jenkins were tried separately. The jury convicted Grey of second-degree conspiracy to commit aggravated arson and three counts of felony murder, but found him not guilty of murder, second-degree aggravated arson, or third-degree terroristic threats.

Grey moved to set aside the felony-murder verdicts. He argued that the jury verdicts were inconsistent, because he was convicted of felony murder without being convicted of the predicate felony of aggravated arson. The State countered that the proof required for accomplice liability was essentially the same as that for the substantive crime of conspiracy to commit aggravated arson. Thus, the same conduct was required for conviction as either an accomplice or a coconspirator, thereby establishing the predicate for the felony murder convictions.

The State further argued that the inconsistent verdicts were the result of the jurors' confusion about the trial court's charge, which seemed to imply that Grey could be guilty of aggravated arson only if he acted as a principal, meaning that he alone or in concert with Jenkins actually set fire to the house. In any event, the State contended, New Jersey permits juries to hand down inconsistent verdicts.

The trial court denied Grey's motion. It sentenced Grey to concurrent terms of forty-five years of imprisonment with thirty years of parole ineligibility on the three felony murder counts. It merged the conspiracy conviction with the first felony murder conviction.

On appeal, the Appellate Division affirmed the conviction and sentence. The court reasoned that consistent verdicts are not required by New Jersey law. It found that a reasonable jury could have concluded that Grey had aided Jenkins in the commission of arson and thus be responsible for the felony-murder as an accomplice, but nevertheless could have declined to convict Grey of aggravated arson due to compromise, mistake, or lenity. *State v. Grey*, 281 *N.J.Super.* 2, 656 *A.*2d 437 (App.Div.1995). We granted defendant's petition for certification, limited to the issue of inconsistent verdicts. 142 *N.J.* 452, 663 *A.*2d 1359 (1995).

## II

In *Dunn v. United States*, 284 *U.S.* 390, 52 *S.Ct.* 189, 76 *L.Ed.* 356 (1932), the government charged Dunn with (1) maintaining a nuisance for the sale of alcoholic beverages, (2) the unlawful possession of alcoholic beverages, and (3) the unlawful sale of alcoholic beverages. The jury acquitted Dunn of (2) and (3), but convicted him of (1). The Court held that the inconsistency in the verdicts did not necessarily indicate that the jury was unconvinced of the defendant's guilt, but that such a verdict might indicate only an exercise of leniency or nullification. Justice Holmes observed that "[i]f separate indictments had been presented against the defendant ... and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be pleaded as res judicata of the other." *Id.* at 393, 52 *S.Ct.* at 190, 76 *L.Ed.* at 359.

*United States v. Powell*, 469 *U.S.* 57, 105 *S.Ct.* 471, 83 *L.Ed.*2d 461 (1984), reaffirmed this rule. In *Powell* the jury convicted the defendant of using a telephone to facilitate a conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute, but acquitted the defendant of conspiracy and possession charges. The defendant argued that the verdicts were inconsistent since she could not have facilitated either possession or a conspiracy to possess when she was acquitted on the underlying possession and conspiracy charges. The Supreme Court

unanimously disagreed, saying that "[i]t is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense [the facilitating offense], and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense [the conspiracy and possession offenses]." *Id.* at 65, 105 *S.Ct.* at 476, 83 *L.Ed.*2d at 468.

The *Dunn* and *Powell* decisions are not binding on us but we agree with their logic. In *State v. Ingenito*, 87 *N.J.* 204, 432 *A.*2d 912 (1981), the Court observed that

> [t]he responsibility of the jury in [determining] ... guilt or innocence, is so pronounced and preeminent that we accept inconsistent verdicts that accrue to the benefit of a defendant. Indeed, a jury has the prerogative of returning a verdict of innocence in the face of overwhelming evidence of guilt. It may also refuse to return a verdict in spite of the adequacy of the evidence. This is indicative of a belief that the jury in a criminal prosecution serves as the conscience of the community and the embodiment of the common sense and feelings reflective of society as a whole.
>
> [*Id.* at 211–12, 432 *A.*2d 912 (citations omitted).]

*See also State v. Crisantos (Arriagas)*, 102 *N.J.* 265, 508 *A.*2d 167 (1986) (stating criminal jury may return illogical or inconsistent verdicts that would not be tolerated in civil trials). So long as the evidence is sufficient to support a conviction on the substantive offense beyond a reasonable doubt, such verdicts are normally permitted. *State v. Petties*, 139 *N.J.* 310, 654 *A.*2d 979 (1995). In *State v. Kamienski*, 254 *N.J.Super.* 75, 603 *A.*2d 78 (App.Div.), *certif. denied*, 130 *N.J.* 18, 611 *A.*2d 656 (1992), the court found that an acquittal of the charge of conspiracy to rob or to murder did not legally preclude a conviction for murder and felony murder. The court reasoned that a jury could find accomplice liability independent of whether a conspiracy existed. And in *State v. Mangrella*, 214 *N.J.Super.* 437, 519 *A.*2d 926 (App.Div.1986), *certif. denied,* 107 *N.J.* 127, 526 *A.*2d 194 (1987), the court invoked the provisions of the Code of Criminal Justice concerning the doctrine of lesser-included offenses. The court upheld a conviction for burglary despite an acquittal for the offense of theft

because the acquittal did not preclude finding all the elements necessary for a burglary conviction.[1]

Defendant relies on *State v. Peterson*, 181 *N.J.Super.* 261, 437 *A.*2d 327 (App.Div.1981), *certif. denied*, 89 *N.J.* 413, 446 *A.*2d 144 (1982), which qualified the general rule of acceptance of inconsistent verdicts by stating that unless inconsistent verdicts preclude the establishment of an element of an offense, an acquittal does not affect the validity of a conviction supported by sufficient evidence. However, *Peterson* relied in part on the reasoning of *United States v. Hannah*, 584 *F.*2d 27 (3d Cir.1978), which was later disapproved in *Powell.* In *State v. Burnett*, 245 *N.J.Super.* 99, 584 *A.*2d 268 (App.Div.1990), the court rejected the *Peterson* rule that an acquittal on one offense that precludes the finding of one or more elements of a second offense invalidates a conviction on the second offense because it believed that this Court would apply the doctrine of unreviewability even in such circumstances.

### III

The *Dunn/Powell* rule should apply when the reason for the inconsistent verdicts cannot be determined. In such cases, we should not speculate as to whether the verdicts resulted from jury lenity, compromise, or mistake not adversely affecting the defendant. In *Powell*, the Supreme Court explained that

inconsistent verdicts ... should not necessarily be interpreted as a windfall to the Government at the defendant's expense.

It is equally possible that the jury, convinced of guilt, properly reached its [guilty verdict] ... and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on [a different] offense. But in such situations the Govern-

---

[1] *State v. Hawkins*, 178 *N.J.Super.* 321, 428 *A.*2d 1322 (App.Div.), *certif. denied*, 87 *N.J.* 382, 434 *A.*2d 1066 (1981), a pre-Code case, reversed the conspiracy conviction of a defendant when his two coconspirators were acquitted. The court reasoned that when a jury finds that A did not conspire with B, that finding negates the possibility of the same jury finding that B conspired with A. Such a verdict "defies an explanation." *Id.* at 323, 428 *A.*2d 1322. Of course, under the Code, it is now possible to convict only one person of conspiracy. *N.J.S.A.* 2C:5–2.

ment has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause.

Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction *as a matter of course.*

[*Powell, supra,* 469 *U.S.* at 65, 105 *S.Ct.* at 476–477, 83 *L.Ed.*2d at 468–469 (emphasis added) (citations omitted).]

We quite agree with that statement of the law. The problem with the analysis in this case is that there is virtually no "uncertainty." The reason for the verdict appears from the record. Despite the prosecutor's repeated attempts to persuade the trial court to clarify its charge to the jury on accomplice liability for aggravated arson, the court did not correct its original charge. Early in its instructions, the court instructed the jury that Count Two of the indictment charged defendant with committing aggravated arson as a principal:

The second count indicates [*the defendant*] . . . *did commit the act of starting a fire* at 19 Vanderpool Street, Newark, New Jersey, thereby purposely or knowingly placing another person in danger of death or bodily injury and or with the purpose of destroying said structure of another. Commonly referred to . . . as aggravated arson.

. . . .

In order for you to find the defendant to be guilty of aggravated arson, the state must prove the following elements beyond a reasonable doubt. *One; that the defendant started a fire* . . . .

. . . .

If the state has proven each element beyond a reasonable doubt, then you should find the defendant guilty of aggravated arson.

[Emphasis added.]

Not until much later in the instructions did the trial court charge the elements of accomplice liability:

The state's theory here, ladies and gentlemen, is not that [defendant] was the person who actually set the fire, but he aided and abetted Mr. Jenkins [the accused principal]. A person is an accomplice of another person in the commission of a crime when with the purpose of promoting or facilitating the commission of that crime that person aides [sic], agrees or attempts to aid such other person in planning or committing it.

After further instructions, the court excused the jury to deliberate. Shortly after beginning deliberations, the jury sent in a note requesting further instruction. The note stated simply: "[Y]our Honor please inform us of the law for count two," the aggravated arson count. When the court showed that request to counsel, the prosecutor immediately commented that "it may have been a little confusing" to instruct the jurors first on the responsibility for the substantive crime of aggravated arson as a principal, and then later to instruct them on accomplice liability. The State therefore asked the trial court to "focus on" defendant being charged as an aider and abetter when instructing the jurors anew on aggravated arson. Defense counsel argued, however, that the jury "didn't ask for [the] law on accomplice [liability]," and had only requested the law on aggravated arson. Defense counsel requested that the trial court simply reread the charge on aggravated arson. The trial court agreed and responded that. it would give "[j]ust the straight charge." The jury was brought back and the trial court gave the following instruction:

> [Y]our recent note reads as follows; your Honor please inform us of the law for count two. Count two was aggravated arson[.] I assume that's a repeat of what I told you initially.
>
> *The indictment charges . . . this defendant with aggravated arson in violation of a statute which reads in pertinent part as follows: A person is guilty of aggravated arson if he starts a fire,* whether on his property or another[']s. Thereby purposely or knowingly placing any other person in danger of death or bodily injury, or with the purpose of destroying a building or structure of another. . . .
>
> [Emphasis added.]

That recharge repeated the full charge on aggravated arson as a principal and did not include any discussion of accomplice liability. After the jury was excused for further deliberations, the prosecutor again argued:

> I don't think it is enough to charge after the fact he's charged as an[ ] aider and abettor. I think they have to focus on what the culpability is [when] we talk about the defendant[.] [C]learly now it's not the state's theory never been that this defendant started the fire.

The trial court responded, "I forgot to tell them to keep that portion of the charge in connection with the other. Let's bring

them out." The jury was brought in and given the following brief instruction:

I neglected to tell you something. Although you asked and I did instruct you as to count two aggravated arson, you have to keep that charge together with my entire charge, when you go back in to deliberate. Want to be sure you understood that. Thank you. You may return.

On further reflection, the court thought that the jury may have been confused because it had incorrectly charged the jury initially that defendant could be found guilty of arson for acting "recklessly." *N.J.S.A.* 2C:17–1b does allow for an arson conviction based on reckless conduct; however, this case did not involve recklessness. The prosecutor disagreed, arguing that more likely the jury was confused about whether it was to determine defendant's culpability for aggravated arson as a principal or as an accomplice. The prosecutor believed that the court should wait to see if the jury requested clarification. The court, however, decided to recall the jury a third time to give it further instructions. The new instruction again did not mention accomplice liability, but instead focused on the fact that the charge of aggravated arson involved either purposeful or knowing conduct, rather than recklessness. The court again excused the jury. Soon thereafter, the jury returned with its verdict: guilty of second-degree conspiracy to commit aggravated arson; not guilty of second-degree aggravated arson; not guilty of three counts of murder; guilty of three counts of felony murder; and not guilty of third-degree terroristic threats.

That charging sequence undoubtedly led the jury to acquit defendant of the underlying predicate to a felony murder conviction. This, then, is *not* a case like *Powell* in which inconsistency suggests that "the jury has not followed the court's instructions." 469 *U.S.* at 65, 105 *S.Ct.* at 477, 83 *L.Ed.*2d at 469. This jury followed the court's instructions on arson because it thought that only the one who set the fire could be guilty of arson; it followed the court's instructions on felony-murder but those instructions misled the jurors. The jury, in short, was led down the wrong path. The jurors had erroneously believed that defendant could

not be convicted of aggravated arson unless he set the fire himself. That is evidenced by their acquittal on arson. They acquitted defendant of the aggravated arson charge after finding that he was not a principal. However, the jurors believed that defendant was guilty of conspiracy to commit aggravated arson, as clearly indicated by their finding of guilt on that count. Thus, they must have concluded the conspiracy to commit aggravated arson would suffice as the predicate felony to the felony-murder charge. This was the trial court's understanding of the verdict, because it believed that the conspiracy count could form the predicate for felony murder. It stated "the fact that there was a conviction of the conspiracy to commit arson ... in itself would be sufficient to be the predicate for [the felony murder counts]."

We know that the substantive crime of conspiracy is not a predicate offense for felony murder. *See N.J.S.A.* 2C:11–3a(3) (listing predicate felonies). However, the charge did not explain that. Although the court explained to the jury that defendant could be guilty of conspiracy without being guilty of aggravated arson, it failed to explain that defendant could not be guilty of felony murder without also being guilty as an accomplice. The felony murder charge required that the jurors first find that defendant was *"engaged* in the commission of aggravated arson" (emphasis added) for the jurors to convict of felony murder. Had the jury understood that conspiracy to commit arson could not be a predicate felony for the felony murder charge, it could not have convicted defendant of felony murder since it did not convict him as a principal.

The counter-argument, that had the jury properly understood the accomplice charge then it would have convicted defendant, would require us to rewrite the verdict. True, the jurors might have convicted defendant as an accomplice to arson and perhaps they would have convicted defendant if otherwise charged, but we cannot substitute our interpretation of the verdict for the jury's own. The jury simply did not convict defendant of arson. It is "the nondelegable and nonremovable responsibility of

the jury to decide" the question of guilt or innocence in accordance with the instructions given to it. *Ingenito, supra,* 87 *N.J.* at 211, 432 *A.*2d 912. The question is not whether a *theory* of guilt may be spelt out of a record, but whether guilt on that theory has been found by a jury. *State v. Schmidt,* 110 *N.J.* 258, 540 *A.*2d 1256 (1988).

The proper focus is on whether the jurors validly found defendant guilty of felony murder. The sequence of events here leads to one conclusion: the jury undoubtedly relied upon an improper predicate felony, and thus did not properly convict defendant; it did *not* exercise lenity. A verdict based on such an improper predicate cannot stand.

This, then, is an idiosyncratic case. It is not a case in which the jury having "properly reached its conclusion on the compound offense . . . then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." *Powell, supra,* 469 *U.S.* at 65, 105 *S.Ct.* at 476, 83 *L.Ed.*2d at 468. It is a case in which the inconsistency in the verdicts is undoubtedly due to the jury's erroneous belief that it could convict defendant of felony murder based on the conspiracy count. Although the jury might well have convicted the defendant of aggravated arson as an accomplice, it did not do so for reasons acknowledged by the prosecution to be related to the sequence of the charge and recharge on aggravated arson. This problem will most likely never arise again.

■ This is the first case in our experience in which we would be asked to uphold a felony murder conviction when a jury has acquitted a defendant of the underlying predicate felony. In felony-murder cases, courts should instruct juries that they may not convict a defendant of felony murder unless they convict the defendant of the underlying offense that is a predicate to the felony-murder conviction. That offense need not be a completed felony. The felony-murder statute allows a felony-murder conviction when the actor "is engaged in the commission of, *or an attempt to commit*" one of the underlying felonies. *N.J.S.A.* 2C:11–3a(3) (emphasis added). In some cases, therefore, the

predicate might consist of an attempt, for example, an attempt to commit the felony of rape. In cases of completed offenses, such as the one in this case, a court should instruct a jury that it should not convict a defendant of felony murder unless it convicts the defendant of the underlying felony.[2] We request that our Committee on Model Criminal Jury Charges consider any needed revisions of the Model Charge.

## IV

To sum up, this case is not about speculation as to the reasons for the inconsistent verdict but, rather, about a misleading charge that led to a verdict not permitted under our law. Our holding in this case does not carve out an exception to the *Dunn/Powell* rule; the *Dunn/Powell* rule does not apply in the circumstances of this case. The *Dunn/Powell* rule does not sanitize other trial errors. In its brief to the Supreme Court in *Powell*, the United States emphasized that "there was [not] any defect or unfairness in the trial proceeding."

In this case there was. The unusual sequence in the charge on aggravated arson explains why the jury did not convict defendant as an accomplice to aggravated arson. The conviction of conspiracy to commit aggravated arson may not serve as the predicate to a felony-murder conviction. As noted, defendant has been convicted of second-degree conspiracy to commit aggravated arson. He has an extensive record and may be sentenced as a persistent offender for that unmerged conviction. *N.J.S.A.* 2C:44–3a.

## V

The judgment of the Appellate Division upholding the conviction of three counts of felony murder is reversed. The previously

---

[2] In *State v. Harris*, 141 *N.J.* 525, 662 *A.*2d 333 (1995), we noted in the context of capital sentencing, that sometimes there may be multiple underlying felonies and that a jury need only be told that it must unanimously agree that the accused has committed one of the alleged felonies.

merged conviction of second-degree conspiracy to commit aggravated arson is remanded for resentencing.

COLEMAN, Justice, dissenting in part and concurring in part.

The Court purports to adopt *Dunn–Powell,* but to avoid its application to the present case, the Court holds that because the jury convicted defendant of felony murder without convicting him of the predicate felony of aggravated arson that was charged in the indictment, "the jury undoubtedly relied upon an improper predicate felony." *Grey, supra,* 147 *N.J.* at 16, 685 *A.*2d at 929. To support that conclusion, the Court speculates that because the jury found defendant guilty of conspiracy to commit aggravated arson, "they must have concluded the conspiracy to commit aggravated arson would suffice as the predicate felony to the felony-murder charge." *Id.* at 15, 685 *A.*2d at 928. The Court further speculates that because of an unspecified "sequence of events . . . the jury . . . did not properly convict defendant; it did *not* exercise lenity." *Id.* at 16, 685 *A.*2d at 929.

The few jurisdictions that have not followed *Dunn–Powell* have carved out exceptions for compound-felony cases. No jurisdiction has failed to apply *Dunn–Powell* based solely on speculations about why the jury reached inconsistent verdicts. Indeed, this Court has consistently adjured lower courts not to speculate about why a jury reached a certain result. Today, the Court has chosen to ignore its well-established law to reach a result that not even counsel for the defendant has urged.

I dissent from the Court's holding, not only because it is not grounded in the facts or the law, but because "[t]he route to [the Court's holding] converts . . . the Court of last resort . . . to some sort of super rescue-mission." *Whitfield v. Blackwood,* 101 *N.J.* 500, 501, 502 *A.*2d 1132 (1986) (Clifford, J., concurring). Based on the *Dunn–Powell* sufficiency of the evidence standard, I would affirm the judgment of the Appellate Division.

I

-A-

The Court's conclusion that the felony-murder convictions were based on the jury using conspiracy to commit arson as the predicate felony was soundly rejected by the Appellate Division. Indeed, the record discloses that the jury was never instructed that it could find defendant guilty of felony murder based on his liability as a co-conspirator to commit aggravated arson. Absent such instruction, I find no basis to conclude that the jury used conspiratorial liability under *N.J.S.A.* 2C:2–6b(4) to find defendant guilty of the felony murders.

In this appeal, defendant contends that the jury's acquittal on the charge of aggravated arson constitutes the equivalent of a finding by the jury that the State failed to prove an essential element of felony murder. According to defendant, he was merely a bystander who "undertook no action" in response to Jenkins's request that he act as the lookout. Thus, defendant implies the jury's acquittal must have been based on its conclusion that he was not an accomplice in the aggravated arson, and therefore, the felony-murder convictions must be vacated.

The State responds that defendant's acquittal of aggravated arson does not invalidate the felony-murder convictions. The State asserts that New Jersey has embraced a test, followed in the majority of reported decisions in this State, under which inconsistent verdicts may stand when it can be said that they may be the result of a jury's exercise of its power, but not right, of lenity or nullification. The State also asserts that an independent review of the sufficiency of the evidence, undertaken by trial and appellate courts, protects a criminal defendant from jury error. The State argues, therefore, that the inquiry here should be limited to whether defendant's convictions for felony murder were supported by sufficient evidence to permit a rational fact finder to find beyond a reasonable doubt that defendant, as an accomplice, "engaged in the commission of" aggravated arson, and that the

deaths resulted therefrom. The State emphasizes that this inquiry is independent of the jury's determination on the charge of aggravated arson.

-B-

To establish that defendant was guilty of the three felony murders, the State had to prove that defendant was vicariously liable for the deaths of three people caused by Jenkins setting fire to 19 Vanderpool Street. Felony murder is an absolute liability offense. *State v. Martin*, 119 *N.J.* 2, 22, 573 *A.2d* 1359 (1990). Nonetheless, the State was required to prove the elements of aggravated arson and establish that the deaths resulted as "a probable consequence of" the actor's commission of the aggravated arson. *Id.* at 25, 27, 573 *A.2d* 1359 (relying on *N.J.S.A.* 2C:2-3e).

Aggravated arson, the predicate felony involved, is defined as starting a fire on property owned by the actor or another "[t]hereby purposely or knowingly placing another person in danger of death or bodily injury; or ... [w]ith the purpose of destroying a building or structure of another." *N.J.S.A.* 2C:17-1a(1), (2).

Although the trial court referred to a principal's criminal liability when defining the elements of an aggravated arson, the jury was instructed that the State sought to impose vicarious liability on defendant for the aggravated arson and homicides only as an accomplice. Pertinent to this case, accomplice liability is defined as follows:

b. A person is legally accountable for the conduct of another person when:

. . . . . . . .

(3) He [or she] is an accomplice of such other person in the commission of an offense. . . .

. . . . . . . .

c. A person is an accomplice of another person in the commission of an offense if: (1) With the purpose of promoting or facilitating the commission of the offense; he [or she]

. . . . . . . .

(b) Aids or agrees or attempts to aid such other person in planning or committing it. . . .

[*N.J.S.A.* 2C:2-6.]

The jury was properly instructed pursuant to that statute, and it is presumed that the jury followed the court's instructions. *State v. Perry*, 124 *N.J.* 128, 166, 590 *A.*2d 624 (1991); *State v. Manley*, 54 *N.J.* 259, 270, 255 *A.*2d 193 (1969).

Viewing the State's evidence in its entirety, unlike the majority members of this Court, I find no basis to conclude that defendant's convictions for felony murder should be vacated. A reasonable jury could have found that defendant participated in the commission of aggravated arson as an accomplice. Defendant admitted to purposely aiding Jenkins set fire to the house by acting as a "look out" while Jenkins entered the house with a can that defendant knew contained gasoline. Explaining why he agreed to be a look out, defendant described himself as a "follower" involved "in the drug game." Defendant aided Jenkins knowing that Jenkins intended to start the fire because Jenkins told defendant that he was going to burn Bellinger out of the house. Furthermore, defendant delivered that threat to members of Bellinger's family. Thus, there was overwhelming credible evidence to support a finding that defendant was guilty as an accomplice of aggravated arson and felony murders beyond a reasonable doubt.

Despite the overwhelming evidence that defendant aided Jenkins in the commission of aggravated arson, the jury found defendant not guilty of that predicate offense. The conclusion is inescapable that the verdicts of not guilty of aggravated arson and guilty of felony murder in this case are inconsistent. Unlike the majority, I do not believe that because the inconsistent verdicts in this case may be idiosyncratic under the decisional law of this State, a guilty person should go free on the charges of felony murder.

## II

My approach to deciding whether the inconsistent verdicts in this case should be permitted requires a determination of whether

the convictions for felony murder are irrationally inconsistent with the jury's acquittal on the predicate felony. An irrationally inconsistent verdict is one that is not reasonably supported by the evidence presented during the trial. Although various panels in the Appellate Division have been somewhat divided over what standard should inform the decision, the division is not nearly as sharp as defendant suggests. My conclusion that the federal rule should be adopted "gains perspective from a detailed examination of the cases that have considered various applications of the" rule. *Hovbilt, Inc. v. Township of Howell*, 138 *N.J.* 598, 606, 651 *A.*2d 77 (1994).

-A-

The federal rule was established over one-half century ago. In *Dunn v. United States*, 284 *U.S.* 390, 52 *S.Ct.* 189, 76 *L.Ed.* 356 (1932), the United States Supreme Court held that a criminal defendant convicted by a jury on one count of an indictment may not attack that conviction simply because it is inconsistent with the jury's verdict of acquittal on another count. *Id.* at 393–94, 52 *S.Ct.* at 190–91, 76 *L.Ed.* at 358–59.

The defendant in *Dunn* was indicted on three counts of violations of federal liquor laws. *Id.* at 391, 52 *S.Ct.* at 189, 76 *L.Ed.* at 358. The first count charged the defendant with maintaining a common nuisance by keeping intoxicating liquor for sale at a certain place. *Ibid.* The second and third counts alleged unlawful possession of the liquor and unlawful sale of the liquor respectively. *Ibid.* The same evidence was relied on to establish all three counts. *Id.* at 392, 52 *S.Ct.* at 189, 76 *L.Ed.* at 358. The jury convicted the defendant of the first count and acquitted him of the second and third counts. *Ibid.* The Supreme Court rejected the defendant's claim that he was entitled to have his conviction vacated because of inconsistent verdicts. *Id.* at 393–94, 52 *S.Ct.* at 190–91, 76 *L.Ed.* at 358–59. Justice Holmes was brief and to the point:

> Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. . . .
>
> "The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity."
>
> That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.
>
> [<em>Ibid.</em> (citations omitted).]

Fifty-two years after *Dunn* was decided, the issue of inconsistent verdicts was revisited in *United States v. Powell,* 469 *U.S.* 57, 105 *S.Ct.* 471, 83 *L.Ed.*2d 461 (1984). In *Powell,* the Ninth Circuit reversed the defendant's conviction on the compound offense of using a telephone to commit and facilitate certain predicate felonies because the jury had acquitted the defendant of the predicate felonies. *United States v. Powell,* 719 *F.*2d 1480, 1481 (9th Cir.1983), *rev'd,* 469 *U.S.* 57, 105 *S.Ct.* 471, 83 *L.Ed.*2d 461 (1984). The Ninth Circuit acknowledged that it "follows the *Dunn* rule," *id.* at 1480, but then did precisely what the majority has done in the present case: it viewed the case before it as an exception to *Dunn. Id.* at 1481. The court concluded, as has the majority in the present case, that the conviction on the compound offense could not stand in light of the acquittal on the predicate felony. *Ibid.*

The Ninth Circuit relied in part on the Third Circuit's decision in *United States v. Hannah,* 584 *F.*2d 27 (3d Cir.1978). Like the defendant in *Powell,* Hannah was convicted of using a telephone to facilitate a felony and was acquitted of the underlying felony. *Id.* at 28. The Third Circuit affirmed the trial court's directed verdict of acquittal on the telephone facilitation charge. *Ibid.* Focusing on the "interdependent" nature of the counts charged in the indictment, just as the majority has done today, the court concluded that the reasoning of *Dunn* was inapplicable:

> As has been previously observed, because of the interdependent Count III–Count I theory presented by the government at trial, we cannot conclude that "[e]ach count in [this] indictment is regarded as if it was a separate indictment."

... In *Dunn* ... the several counts each constituted a discrete offense. This case, however, was presented to the jury on a very limited basis: that the "acts constituting a felony" under § 843(b) in Count III were the very same acts that constituted the conspiracy alleged in Count I. Because the jury found Hannah not guilty of conspiracy, the felony relied upon by the government to satisfy the felony requirement of § 843(b), the government's case in Count III was insufficient as a matter of law. Accordingly, we will not apply the permissible inconsistent verdict rule to reinstate Hannah's conviction.

[*Id.* at 30 (citations omitted).]

In a unanimous decision authored by Justice Rehnquist and joined by Chief Justice Burger and Associate Justices Brennan, White, Marshall, Blackmun, Powell, Stevens, and O'Connor, the United States Supreme Court in *Powell* reversed the Ninth Circuit, reaffirmed *Dunn,* and expressly rejected *Hannah* and other cases in which courts had sought to carve out exceptions to *Dunn* based on inconsistent verdicts on compound offenses. *Powell, supra,* 469 *U.S.* at 64–67, 105 *S.Ct.* at 476–78, 83 *L.Ed.*2d at 468–70. The Court stated:

We believe that the *Dunn* rule rests on a sound rationale.... As the *Dunn* Court noted, where truly inconsistent verdicts have been reached, "[t]he most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." ... [I]nconsistent verdicts— even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations ... the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause.

Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored.... [T]he possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest. This possibility is a premise of *Dunn*'s alternative rationale—that such inconsistencies often are a product of jury lenity....

The burden of the exercise of lenity falls only on the Government, and it has been suggested that such an alternative should be available for the difficult cases where the jury wishes to avoid an all-or-nothing verdict. Such an act is, as the *Dunn* Court recognized, an "assumption of a power which [the jury has] no right to exercise," but the illegality alone does not mean that such a collective judgment

should be subject to review. The fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable.

*We also reject, as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them.* Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake.... Courts have always resisted inquiring into a jury's thought processes. [T]hrough this deference the jury brings to the criminal process, in addition to the collective judgment of the community, an element of needed finality.

[*Ibid.* (citations omitted) (emphasis added) (footnote omitted).]

To summarize, the *Powell* Court concluded that inconsistent verdicts in criminal trials should be insulated from review for two related reasons. First, the inconsistency may be the result of jury mistake, compromise, lenity, or some unspecified error that worked against a defendant. Second, due to double jeopardy principles, the government is unable to invoke review of an acquittal despite error, compromise, or lenity.

That a jury possesses the *power* to acquit for impermissible reasons is clear. *See, e.g., United States v. Dotterweich,* 320 *U.S.* 277, 279, 64 *S.Ct.* 134, 135, 88 *L.Ed.* 48, 50–51 (1943) ("Whether the jury's verdict was the result of carelessness or compromise ... is immaterial. Juries may indulge in precisely such motives or vagaries."); *Dunn, supra,* 284 *U.S.* at 393, 52 *S.Ct.* at 190–91, 76 *L.Ed.* at 359.

That the jury's power to acquit is generally unreviewable is also clear. Four years prior to *Powell,* the United States Supreme Court discussed the government's inability to invoke review of an acquittal in *Standefer v. United States,* 447 *U.S.* 10, 100 *S.Ct.* 1999, 64 *L.Ed.*2d 689 (1980). The issue in *Standefer* was whether the doctrine of nonmutual collateral estoppel mandated reversal of a conviction for aiding and abetting in the commission of a federal offense where the named principal had been previously acquitted of the offense.

Standefer was convicted of paying for certain vacation trips taken by an Internal Revenue Service (IRS) official who had been

acquitted in an earlier trial of accepting unlawful compensation in connection with the trips. *Id.* at 12, 100 *S.Ct.* at 2002, 64 *L.Ed.*2d at 693. Standefer claimed that the government should have been barred from relitigating whether the IRS official had accepted the gifts. *Id.* at 13, 100 *S.Ct.* at 2002, 64 *L.Ed.*2d at 694. This issue was an element of the charges against the defendant. *Ibid.* The Supreme Court disagreed. Chief Justice Burger, writing for a unanimous court, explained:

> [I]n a criminal case, the Government is often without the kind of "full and fair opportunity to litigate" that is a prerequisite of estoppel.... [The prosecution] is prohibited from being granted a directed verdict or from obtaining a judgment notwithstanding the verdict no matter how clear the evidence in support of guilt; it cannot secure a new trial on the ground that an acquittal was plainly contrary to the weight of the evidence; and it cannot secure appellate review where a defendant has been acquitted.
>
> The absence of these remedial procedures in criminal cases permits juries to acquit out of compassion or compromise or because of "'their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.'" [*Dunn v. United States,* 284 *U.S.* 390, 393, 52 *S.Ct.* 189, 190, 76 *L.Ed.* 356, 359 (1932) (quoting *Steckler v. United States,* 7 *F.*2d 59, 60 (2d Cir.1925)).] It is of course true that verdicts induced by passion and prejudice are not unknown in civil suits. But in civil cases, post-trial motions and appellate review provide an aggrieved litigant a remedy; in a criminal case the Government has no similar avenue to correct errors. Under contemporary principles of collateral estoppel, this factor strongly militates against giving an acquittal preclusive effect.
>
> [*Standefer, supra,* 447 *U.S.* at 22–23, 100 *S.Ct.* at 2007, 64 *L.Ed.*2d at 699–700 (citations omitted).]

Powell and Standefer presented similar arguments and attempted to persuade the Court that, in light of their acquittals on charges based on essentially the same facts, principles akin to collateral estoppel precluded their convictions. The *Powell* Court expressly rejected that argument, as well as the alternative argument that the acquittal on the predicate offense necessitated a finding of insufficient evidence on the compound offense. *Powell, supra,* 469 *U.S.* at 67–68, 105 *S.Ct.* at 478, 83 *L.Ed.*2d at 470–71. The Court provided:

> [R]espondent's argument that an acquittal on a predicate offense necessitates a finding of insufficient evidence on a compound felony count simply misunderstands the nature of the inconsistent verdict problem. Whether presented as an insufficient evidence argument, or as an argument that the acquittal on the predicate

offense should collaterally estop the Government on the compound offense, the argument necessarily assumes that the acquittal on the predicate offense was proper—the one the jury "really meant." This, of course, is not necessarily correct; all we know is that the verdicts are inconsistent. The Government could just as easily—and erroneously—argue that since the jury convicted on the compound offense the evidence on the predicate offense must have been sufficient. The problem is that the same jury reached inconsistent results; once that is established principles of collateral estoppel—which are predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict—are no longer useful.

[*Ibid.*]

The *Dunn–Powell* rule contains its own protective mechanism to guard against improper verdicts. A criminal defendant "is afforded protection against jury [or judge] irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." *Powell, supra,* 469 *U.S.* at 67, 105 *S.Ct.* at 478, 83 *L.Ed.*2d at 470. That protective mechanism was summarized as follows:

Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt. *This review should be independent of the jury's determination that evidence on another count was insufficient.* The Government must convince the jury with its proof, and must also satisfy the courts that given this proof the jury could rationally have reached a verdict of guilt beyond a reasonable doubt. *We do not believe that further safeguards against jury irrationality are necessary.*

[*Ibid.* (emphasis added) (citations omitted).]

Analytically, the *Dunn–Powell* sufficiency-of-the-evidence standard is similar to that articulated in *State v. Reyes,* 50 *N.J.* 454, 458–59, 236 *A.*2d 385 (1967), for a motion for a directed verdict of acquittal at the close of all the evidence. *See R.* 3:18–1. The test to apply when challenging the sufficiency of the evidence is

whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.

[*State v. Reyes,* 50 *N.J.* 454, 459, 236 *A.*2d 385 (1967); *accord State v. Brown,* 80 *N.J.* 587, 591, 404 *A.*2d 1111 (1979) (citation omitted); *see also State v. C.H.,* 264 *N.J.Super.* 112, 128, 624 *A.*2d 53 (App.Div.) (holding that "when the motion is made at the conclusion of the State's case, the court is not to review the evidence presented by defendant"), *certif. denied,* 134 *N.J.* 479, 634 *A.*2d 526 (1993); *State*

*v. Johnson,* 274 *N.J.Super.* 137, 156–57, 643 *A.*2d 631 (App.Div.) (applying *Reyes* standard to determine how motion for acquittal should be decided), *certif. denied,* 138 *N.J.* 265, 649 *A.*2d 1285 (1994).]

The *Dunn–Powell* rule stands on firm constitutional grounds. Three years before *Powell* was decided, the United States Supreme Court held that nothing in the United States Constitution requires that verdicts be consistent. *Harris v. Rivera,* 454 *U.S.* 339, 344–45, 102 *S.Ct.* 460, 463–64, 70 *L.Ed.*2d 530, 535 (1981). *Powell* reaffirmed the absence of any federal constitutional claim due to inconsistent verdicts, and made clear that the *Dunn–Powell* rule is based on the Court's supervisory power over the federal criminal process. *Powell, supra,* 469 *U.S.* at 65, 105 *S.Ct.* at 477, 83 *L.Ed.*2d at 469. Similarly, the Court's opinion in the present case does not articulate any state constitutional reason why the *Dunn–Powell* rule should not be applied in compound-felony cases.

-B-

Defendant and the State take different positions with respect to how the *Dunn–Powell* rule has been applied in New Jersey. Defendant relies on the reasoning of the Third Circuit in *Hannah,* and asserts that New Jersey case law, in particular, *State v. Peterson,* 181 *N.J.Super.* 261, 268–69, 437 *A.*2d 327 (App.Div.1981), *certif. denied,* 89 *N.J.* 413, 446 *A.*2d 144 (1982), has adopted *Hannah*'s exception and rationale. In contrast, the State relies on *Powell*'s rejection of *Hannah* and cites *State v. Burnett,* 245 *N.J.Super.* 99, 584 *A.*2d 268 (App.Div.1990), for the proposition that New Jersey courts follow *Powell.* The Appellate Division in the present case concluded that New Jersey "ha[s] embraced the *Dunn–Powell* rule." *Grey, supra,* 281 *N.J.Super.* at 8, 656 *A.*2d 437. Accordingly, the Appellate Division applied the *Dunn–Powell* rule and affirmed the felony-murder convictions.

From a historical perspective, numerous published cases in New Jersey have discussed the problem of inconsistent verdicts. In only three of those cases, however, was the reviewing court's holding based on a finding that the jury's verdict was in fact

inconsistent. *See Burnett, supra,* 245 *N.J.Super.* at 99, 584 *A.*2d 268 (finding conviction on one charge inconsistent with acquittals on other charges that formed factual basis of first charge); *State v. Hughes,* 215 *N.J.Super.* 295, 300, 521 *A.*2d 1295 (App.Div.1986) (finding conviction on one charge inconsistent with deadlock on another charge based on substantially same facts); *State v. Hawkins,* 178 *N.J.Super.* 321, 322–23, 428 *A.*2d 1322 (App.Div.) (finding conviction of one co-conspirator inconsistent with acquittal of other alleged co-conspirators), *certif. denied,* 87 *N.J.* 382, 434 *A.*2d 1066 (1981). Those three cases are discussed in detail *infra.*

In the remainder of the cases, the appellate court based its holding on its determination that the verdicts were not inconsistent. Thus, much of the New Jersey case law that considers inconsistent verdicts constitutes *dicta.*

Before *Dunn* was decided in 1932, New Jersey recognized that a "verdict may be illogical and inconsistent, yet not erroneous." *State v. Bullock,* 4 *N.J. Misc.* 195, 198, 132 *A.* 198 (Sup.Ct.) (declining to speculate on reasons leading a jury to convict principal of rape while acquitting accomplice), *aff'd,* 103 *N.J.L.* 204, 134 *A.* 919 (1926). New Jersey cases decided post-*Dunn,* after 1932, and pre-*Powell,* before 1984, embraced the principle that a court may not upset a verdict by speculating that the verdict was the result of jury compromise. *See, e.g., State v. Coleman,* 46 *N.J.* 16, 44, 214 *A.*2d 393 (1965) (finding "no reason to question conscientiousness of jury's deliberations" in view of "sheer speculation" that verdict was compromise), *cert. denied,* 383 *U.S.* 950, 86 *S.Ct.* 1210, 16 *L.Ed.*2d 212 (1966); *State v. Dancyger,* 29 *N.J.* 76, 92–93, 148 *A.*2d 155 (finding no basis to speculate that jury verdict represented compromise in light of ample evidence supporting guilty verdict), *cert. denied,* 360 *U.S.* 903, 79 *S.Ct.* 1286, 3 *L.Ed.*2d 1255 (1959). This Court also noted that a jury finding of guilt on one count may be upheld even though accompanied by an acquittal on another count containing substantially the same charge. *State v. Roller,* 29 *N.J.* 339, 348, 149 *A.*2d 238 (1959).

In 1970, the Appellate Division decided *State v. Still,* 112 *N.J.Super.* 368, 271 *A.*2d 444 (App.Div.1970), *certif. denied,* 57 *N.J.* 600, 274 *A.*2d 53 (1971), which established the trend for the post-*Dunn* case law in New Jersey. The defendant in *Still* was found guilty of assault with intent to commit sodomy but was acquitted of attempted sodomy. *Id.* at 370, 271 *A.*2d 444. The Appellate Division first concluded that the verdicts were not necessarily inconsistent. *Id.* at 372, 271 *A.*2d 444. The court then provided an alternative holding: assuming the verdicts were inconsistent, they would nevertheless be affirmed on appeal. *Id.* at 373, 271 *A.*2d 444. Relying on *Dunn,* the Appellate Division stated:

> [T]he modern and majority rule is that consistency between the verdicts on the several counts of an indictment or on several indictments, each charging substantially the same offense, is unnecessary where [the] defendant is convicted on one or some counts or indictments but acquitted on others. Such a conviction will generally be upheld irrespective of its rational incompatibility with the acquittal.
>
> [*Ibid.*]

At least five Appellate Division cases decided after the 1970s followed *Still,* citing it for the proposition that even inconsistent verdicts should remain undisturbed on appeal. *See State v. Ortiz,* 253 *N.J.Super.* 239, 245, 601 *A.*2d 735 (App.Div.) (providing that "[a]ny inquiry [with regard to inconsistent verdicts] is limited to whether the counts on which defendant was convicted were supported by sufficient evidence"), *certif. denied,* 130 *N.J.* 6, 611 *A.*2d 646 (1992); *Hughes, supra,* 215 *N.J.Super.* at 300, 521 *A.*2d 1295 (stating that although conviction on one charge was inconsistent with deadlock on another charge based on substantially identical facts, "the rule generally applied is that such inconsistency does not invalidate a verdict of guilty" where the evidence supports the conviction); *State v. D'Arco,* 153 *N.J.Super.* 258, 264, 379 *A.*2d 489 (App.Div.1977) (stating that consistency of verdicts on multiple counts in a single trial is not necessary where evidence supports a guilty verdict); *State v. Maddox,* 153 *N.J.Super.* 201, 214, 379 *A.*2d 460 (App.Div.1977) (finding verdicts not necessarily inconsistent but stating that "even if they were ... it does not entitle defendant to relief" in view of evidence adduced at trial); *State v.*

*Lawrence,* 142 *N.J.Super.* 208, 215–16, 361 *A.*2d 69 (App.Div.1976) (finding verdicts not inconsistent but stating that even assuming inconsistency, defendant's conviction "would nonetheless be valid"); *see also State v. Bontempo,* 170 *N.J.Super.* 220, 237–38, 406 *A.*2d 203 (Law Div.1979) ("Suffice it to say, an inconsistent verdict is not *per se* ground for reversal and, in any event, cannot be the basis for collateral attack on an otherwise valid judgment.").

The Appellate Division found inconsistent verdicts for the first time in a published decision in 1981. *Hawkins, supra,* 178 *N.J.Super.* at 322–23, 428 *A.*2d 1322. In *Hawkins,* the defendant and two co-defendants were indicted for conspiracy to violate narcotics laws, *id.* at 322, 428 *A.*2d 1322, for an offense that occurred on March 29, 1977, in violation of *N.J.S.A.* 24:21–24, now repealed. *N.J.S.A.* 2C:35–23. The indictment named all three individuals as co-conspirators and did not allege the existence of any unindicted or unnamed co-conspirator. *Hawkins, supra,* 178 *N.J.Super.* at 322–23, 428 *A.*2d 1322. The jury acquitted the two co-defendants of conspiracy but convicted the defendant. *Ibid.* In a *per curiam* opinion, the Appellate Division concluded that the verdicts constituted a logical impossibility. *Ibid.* The court therefore declined to rely on *Dunn* and other cases holding that consistency in verdicts is not required:

> The State relies on a line of cases which hold that consistency in verdicts is not required.
>
> It is not necessary to analyze in detail each case regarding inconsistent verdicts relied on by the State. Suffice it to say that none of them involved a conviction in a conspiracy case by the same jury which found the other named coconspirators not guilty. If a jury finds that the State failed to prove beyond a reasonable doubt that Doe conspired with Roe, logic defies an explanation of how it can find proof beyond a reasonable doubt that Roe conspired with Doe. Conspirators must have a "shared objective."
>
> [*Id.* at 323, 428 *A.*2d 1322 (citations omitted).]

A concurring opinion stated that the verdicts "constitute[d] a repugnancy beyond inconsistency" because the jury had found "in effect that the persuasive proof was of a one-man conspiracy, an event which neither the law nor common sense accepts." *Id.* at 324–25, 428 *A.*2d 1322 (Fritz, P.J., concurring).

*Hawkins* was decided under the law that predated the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to *N.J.S.A.* 2C:65–4. The New Jersey law on conspiracy was changed in 1979 after Hawkins was indicted. Under the Code a person may be found guilty of conspiracy when he or she "agrees with [another] person or persons that they or one or more of them will engage in conduct which constitutes [a] crime." *N.J.S.A.* 2C:5–2(a)(1). In *State v. Del Fino*, 100 *N.J.* 154, 495 *A.*2d 60 (1985), the Court observed that the

> Code departs from the traditional notion of conspiracy as an entirely bilateral or multilateral relationship, the view inherent in the standard formulation cast in terms of "two or more persons" agreeing or combining to commit a crime. Attention is directed instead to each individual's culpability by framing the definition in terms of the conduct that suffices to establish the liability of any given actor, rather than the conduct of a group of which he is charged to be a part—an approach that the Drafters of the Code designate as "unilateral."
>
> [*Id.* at 160, 495 *A.*2d 60 (citation omitted).]

According to the legislative commentary:

> One consequence of this approach is to make it immaterial to the guilt of a conspirator whose culpability has been established that the person or all of the persons with whom he conspired have not been or cannot be convicted. Present law frequently holds otherwise, reasoning from the definition of conspiracy as an agreement between two or more persons that there must be at least two guilty conspirators or none.
>
> [*New Jersey Criminal Law Revision Commission*, Vol. II: Commentary at 131 (1971) (quoting *Model Penal Code and Commentaries* § 5.03: Commentary at 399, Official Draft and Revised Comments 1985).]

Thus, the fact that Hawkins's co-conspirators were acquitted is irrelevant under a Code analysis.

Moreover, the Supreme Court affirmed the *Dunn* rule in *Powell* three years after *Hawkins* was decided. The conclusion reached in *Hawkins*—that verdicts that defy logic cannot be upheld despite the rule in *Dunn*—has been rejected in both the federal and New Jersey courts. In *Government of Virgin Islands v. Hoheb*, 777 *F.*2d 138 (3d Cir.1985), the defendant and his brother were charged with conspiracy with intent to distribute marijuana. *Id.* at 139. Only Hoheb was convicted of conspiracy; his brother was acquitted. *Ibid.* The Third Circuit upheld Hoheb's conviction independent of the *Dunn–Powell* rule, finding sufficient evidence

to conclude that Hoheb had conspired with unnamed and unindicted persons other than his brother. *Id.* at 141. Judge Garth argued persuasively in a concurring opinion that Hoheb's conviction could alternatively be sustained under the *Dunn–Powell* rule:

[I]n my view, it is clear that even though the crime charged is a criminal conspiracy which must involve at least two individuals, the acquittal of one defendant and the conviction of his co-defendant may nevertheless be upheld even though the verdict may be deemed inconsistent and irrational.

[*Id.* at 143 (Garth, J., concurring).]

Seven months after *Hawkins* was decided, the Appellate Division decided *Peterson,* on which defendant principally relies for the proposition that inconsistent verdicts do not affect the validity of a conviction supported by sufficient evidence, unless the verdicts "preclude the establishment of an element of the offense." *Peterson, supra,* 181 *N.J.Super.* at 267, 437 *A.*2d 327; *see also Ortiz, supra,* 253 *N.J.Super.* at 245, 601 *A.*2d 735 (finding verdicts not inconsistent and following *Peterson* in *dicta* ); *State v. Mangrella,* 214 *N.J.Super.* 437, 441, 519 *A.*2d 926 (App.Div.1986) (same), *certif. denied,* 107 *N.J.* 127, 526 *A.*2d 194 (1987); *State v. Lopez,* 213 *N.J.Super.* 324, 328, 517 *A.*2d 457 (App.Div.1985) (same), *certif. denied,* 103 *N.J.* 480, 511 *A.*2d 657 (1986); *State v. Mieles,* 199 *N.J.Super.* 29, 41, 488 *A.*2d 235 (App.Div.) (same), *certif. denied,* 101 *N.J.* 265, 501 *A.*2d 933 (1985). In *Peterson,* the defendant was convicted of misconduct in public office but acquitted of the charge of bribery. *Peterson, supra,* 181 *N.J.Super.* at 264, 437 *A.*2d 327. The trial court granted the defendant's subsequent motion for acquittal, finding the verdicts in conflict. *Ibid.* The Appellate Division reversed based on its conclusion that the bribery acquittal did not negate an element of the misconduct charge. *Id.* at 266, 437 *A.*2d 327.

Defendant's reliance on *Peterson* is misplaced when *Peterson* is viewed in its historical context. That case was decided prior to *Powell,* and relied in part on the Third Circuit's decision in *Hannah.* *Powell,* however, expressly disapproved of *Hannah* and other cases that carved out *Peterson*-type exceptions to the *Dunn* rule for inconsistent verdicts on compound crimes. Indeed, the

Third Circuit has acknowledged *Powell*'s rejection of *Hannah* and the exception carved out in *Hannah* for compound felonies. *United States v. Johnstone*, 856 *F.*2d 539, 544 n. 7 (3d Cir.1988). Since *Powell*, most of the Third Circuit's discussion of the *Dunn–Powell* rule constitutes dicta because the verdicts in those cases were not inconsistent. *See United States v. Gross*, 961 *F.*2d 1097, 1107 (3d Cir.), *cert. denied*, 506 *U.S.* 965, 113 *S.Ct.* 439, 121 *L.Ed.*2d 358 (1992); *Government of Virgin Islands v. Edwards*, 903 *F.*2d 267, 271 (3d Cir.1990); *United States v. Messerlian*, 832 *F.*2d 778, 797 (3d Cir.1987), *cert. denied*, 485 *U.S.* 988, 108 *S.Ct.* 1291, 99 *L.Ed.*2d 501 (1988); *Hoheb, supra*, 777 *F.*2d at 142. In the few cases involving inconsistent verdicts, the Third Circuit applied the *Dunn–Powell* rule. *United States v. Vastola*, 989 *F.*2d 1318, 1329 (3d Cir.1993); *United States v. Vastola*, 899 *F.*2d 211, 222–23 (3d Cir.), *judgment vacated on other grounds*, 497 *U.S.* 1001, 110 *S.Ct.* 3233, 111 *L.Ed.*2d 744 (1990).

Although the Appellate Division in *Peterson* articulated a sufficiency-of-the-evidence standard similar to that set forth in *Powell*, it also recognized an exception to *Dunn*. It stated in *dicta* that the *Dunn* sufficiency-of-the-evidence "standard rarely requires a comparison of a jury's verdicts on separate counts of an indictment. Such a comparison is necessary where an acquittal on one count precludes the finding of one or more elements of an offense charged in a second count as a matter of law." *Peterson, supra*, 181 *N.J.Super.* at 266, 437 *A.*2d 327. The Appellate Division in *Peterson* further stated that "[u]nless inconsistent verdicts preclude the establishment of an element of the offense, as in *Hawkins* or *Hannah*, they do not affect the validity of a conviction that is supported by a sufficient quantum of evidence." *Id.* at 267, 437 *A.*2d 327.

Under the *Peterson* approach, where two charges that are based on the same facts result in an inconsistent acquittal and conviction, the acquittal is deemed the "correct" result and the conviction is deemed the "incorrect" result. The jury's verdict of acquittal on the one charge is presumed determinative of innocence on the

other charge, despite the jury's verdict of guilt on that charge. *Peterson*'s resolution of the inconsistent verdict problem is contrary to the *Dunn–Powell* rule. Under *Powell*, sufficiency-of-the-evidence review is independent of the problem posed by facially inconsistent verdicts. Thus, under *Powell*, whether the jury's acquittal on one charge "precludes" conviction on another charge is irrelevant, because the inconsistency may be the result of error, lenity, or compromise. What is significant, however, is whether the conviction, independent of the acquittal on a closely-related charge, is itself supported by evidence sufficient to convince a rational fact finder of guilt beyond a reasonable doubt.

Accordingly, I reject the *Peterson* approach to inconsistent verdicts. First, *Peterson* did not involve inconsistent verdicts. The Appellate Division in *Peterson* concluded that the facts necessary to support the defendant's conviction of official misconduct were not identical to the facts that would have been required to establish a conviction for bribery. *Peterson, supra,* 181 *N.J.Super.* at 268, 437 *A.*2d 327. Thus, any discussion in *Peterson* concerning inconsistent verdicts is *dicta.* The Appellate Division recognized as much in *Burnett, supra,* in which it stated:

> To the extent that ... *Peterson* ... can be read to hold, as the defendant here contends, that an acquittal on one count of an indictment precludes the finding beyond a reasonable doubt of a common element of the offense charged in another count of the same indictment and requires an acquittal on the latter count, we disagree. Instead, we adhere to the principles announced in *Dunn* and *Powell* which we are satisfied have been endorsed by our Supreme Court in [*State v.*] *Ingenito,* [87 *N.J.* 204, 432 *A.*2d 912 (1981) ], [*State v.*] *Crisantos,* [102 *N.J.* 265, 508 *A.*2d 167 (1986) ], and [*State v.*] *Ragland,* [105 *N.J.* 189, 519 *A.*2d 1361 (1986) ].
> [*Burnett, supra,* 245 *N.J.Super.* at 112, 584 *A.*2d 268.]

Second, *Peterson* relied in part on *Hawkins* and *Hannah,* both of which were decided before *Powell.* Furthermore, the *Dunn–Powell* rule rejects the foundation upon which *Peterson* is built, and the very court that decided *Hannah* repudiated its holding in *Hannah* after the Supreme Court closed the door to carving out any exceptions to the *Dunn–Powell* rule. Finally, *Hawkins*'s rationale, that verdicts that "defy logic" cannot stand, has been rejected by the *Dunn–Powell* rule. *See Hoheb, supra,* 777 *F.*2d at

143 (Garth, J., concurring) (concluding that the *Standefer* and *Powell* decisions "have undercut the common law 'rule of consistency' "); *Burnett, supra,* 245 *N.J.Super.* at 109–10, 584 *A.*2d 268 (affirming inconsistent verdicts where they were supported beyond a reasonable doubt by sufficient evidence).

My conclusion that the Court should apply the *Dunn–Powell* rule to the present case is consistent with this Court's most recent discussion of inconsistent verdicts in *State v. Petties,* 139 *N.J.* 310, 654 *A.*2d 979 (1995). The issue in *Petties* was whether the defendant's conviction for possession of a weapon for an unlawful purpose was precluded by his acquittal on a charge of aggravated assault for pointing a gun at another. *Id.* at 317–18, 654 *A.*2d 979. The Court concluded that the verdicts were not inconsistent. *Id.* at 318, 654 *A.*2d 979. The Court then explained that inconsistent verdicts are "normally permitted 'so long as the evidence was sufficient to establish guilt on the substantive offenses beyond a reasonable doubt.' " *Id.* at 319, 654 *A.*2d 979 (citing *Powell, supra,* 469 *U.S.* at 67, 105 *S.Ct.* at 478, 83 *L.Ed.*2d at 470). The Court further declared that the "[r]eview of the sufficiency of the evidence on the guilty verdict is independent of the jury's determination that evidence on another count was insufficient." *Ibid.* (citing *Powell, supra,* 469 *U.S.* at 67, 105 *S.Ct.* at 478, 83 *L.Ed.*2d at 470). Strangely, the Court's decision today represents a pulling back from what it said in *Petties* only eighteen months earlier.

Like federal juries, state juries possess the power to acquit for impermissible reasons. This Court has on more than one occasion acknowledged the jury's power, but not right, of nullification. *Ragland, supra,* 105 *N.J.* at 204–05, 519 *A.*2d 1361 (citing *Dunn, supra,* 284 *U.S.* at 393–94, 52 *S.Ct.* at 190–91, 76 *L.Ed.* at 358–59); *Ingenito, supra,* 87 *N.J.* at 212, 432 *A.*2d 912. In *Crisantos,* the Court observed that a jury may acquit on a greater charge, notwithstanding the sufficiency of the evidence, and convict on a lesser charge. *Crisantos, supra,* 102 *N.J.* at 272, 508 *A.*2d 167. Significantly, *Dunn–Powell* also covers jury nullification.

-C-

A majority of other jurisdictions have adopted the *Dunn–Powell* rule. W.E. Shipley, Annotation, *Inconsistency of Criminal Verdict as between Different Counts of Indictment or Information,* 18 *A.L.R.*3d 259, § 3 (1968 & Supp.1995). Of the few jurisdictions that have specifically addressed whether a conviction for felony murder may stand despite an inconsistent acquittal on the underlying felony, some have upheld inconsistent verdicts for felony murder. *See, e.g., Robinson v. Georgia,* 257 *Ga.* 194, 357 *S.E.*2d 74, 76 (1987) (upholding, under *Dunn–Powell,* a verdict of felony murder where a defendant beat a child to death but the jury acquitted the defendant of cruelty to children); *Ledbetter v. Maryland,* 224 *Md.* 271, 167 *A.*2d 596, 597 (1961) (applying the *Dunn* rule to find sufficient evidence to support a conviction of murder during the perpetration of a robbery though defendant was acquitted of robbery).

Other courts have indicated that if faced with a conviction for felony murder, despite an inconsistent acquittal on the predicate felony, they would affirm the conviction. *See, e.g., Tilden v. Delaware,* 513 *A.*2d 1302, 1306–07 (Del.1986) (holding that under *Dunn–Powell,* "the controlling standard for testing a claim of inconsistent verdicts is the rule of jury lenity now approved coupled with the sufficiency of evidence standard"); *Kansas v. Wise,* 237 *Kan.* 117, 697 *P.*2d 1295, 1299–300 (1985) (stating that "an accused need not be prosecuted or convicted of the underlying felony" to be convicted of felony murder where the evidence is sufficient to support a finding that the homicide took place during commission of the felony); *Pennsylvania v. Munchinski,* 401 *Pa.Super.* 300, 585 *A.*2d 471, 483 (1990) (acknowledging that felony murder requires only "that the actor be found guilty of a homicide in the progress of committing a felony with sufficient evidence to establish a felony was in process and the killing occurred," but does not require indictment, prosecution, and conviction of the predicate felony), *appeal denied,* 529 *Pa.* 618, 600 *A.*2d 535 (1991); *Washington v. Ng,* 110 *Wash.*2d 32, 750 *P.*2d 632, 640 (1988)

(recognizing that the *Dunn–Powell* rule is the majority rule and adopting it because of "considerations of jury lenity, and problems inherent in second-guessing the jury's reasoning as to an acquittal").

Additionally, the New York Court of Appeals permits an inconsistent verdict in felony murder cases, though under a rationale different from the *Dunn–Powell* rule. *See New York v. Berzups,* 49 *N.Y.*2d 417, 426 *N.Y.S.2d* 253, 258, 402 *N.E.*2d 1155, 1160 (1980) (declining to merge a conviction for robbery with a conviction for felony murder because the robbery was "not so much an element of the [felony murder] but instead function[ed] as a replacement for the *mens rea* or intent necessary for common-law murder").

A minority of states, including Florida and Illinois, do not apply the *Dunn–Powell* rule to compound crimes by carving out an exception. Courts in those jurisdictions employ an entirely different approach, upholding "logically inconsistent" verdicts and rejecting "legally inconsistent verdicts." *See, e.g., Mahaun v. Florida,* 377 *So.*2d 1158, 1161 (Fla.1979) (reversing conviction of felony murder because the defendant was not convicted of the underlying felony that was an "essential element" of the felony murder); *Gonzalez v. Florida,* 449 *So.*2d 882, 887–88 (Fla.Dist.Ct.App.) (holding that "logical inconsistencies" are acceptable "as a jury's exercise of its power of lenity" but rejecting "classic legal inconsistencies" such as that in *Mahaun, supra* ), *petition for review denied,* 458 *So.*2d 274 (Fla.1984); *Illinois v. Frias,* 99 *Ill.*2d 193, 75 *Ill.Dec.* 674, 679, 457 *N.E.*2d 1233, 1238 (1983) (recognizing that "legally inconsistent" verdicts cannot stand).

Today, the Court has refused to follow *Dunn–Powell* without adopting the approach used in a minority of states. The logical-legal inconsistency approach used in a few states is similar to the *Peterson* approach in which an exception to the *Dunn–Powell* rule is created. Although both approaches are flawed in two respects, they rest on firmer jurisprudential footings than the speculative approach adopted by the Court today. First, the logical-legal inconsistency and *Peterson* approaches acknowledge jury lenity,

mistake, or compromise in some cases but not in others. Second, the courts adopting that approach reject *Powell*'s conclusion that compound offenses are to be treated the same as other offenses involving inconsistent verdicts. For those reasons, I reject the minority approach. As *Powell* concluded, sufficiency-of-the-evidence review by trial and appellate courts adequately protects defendants from jury irrationality. *See Powell, supra,* 469 *U.S.* at 67, 105 *S.Ct.* at 478, 83 *L.Ed.*2d at 470. Viewed in that context, the *Dunn–Powell* rule is not harsh.

### III

To justify its refusal to follow *Powell* in this case, the Court concludes that "the *Dunn/Powell* rule does not apply in the circumstances of this case.... The unusual sequence in the charge on aggravated arson explains why the jury did not convict defendant as an accomplice to aggravated arson." *Grey, supra,* 147 *N.J.* at 17, 685 *A.*2d at 929. The Court states that "the inconsistency in the verdicts is undoubtedly due to the jury's erroneous belief that it could convict defendants of felony murder based on the conspiracy count." *Id.* at 16, 685 *A.*2d at 929.

That reasoning, or more accurately speculation, fails to reflect the fact that the purpose of the *Powell* decision was to overturn the *Hannah* exception carved out of *Dunn* for compound crimes. Contrary to this Court's approach, the application of *Dunn–Powell* should not rest on whether the government's or the defendant's "ox has been gored." *Powell, supra,* 469 *U.S.* at 65, 105 *S.Ct.* at 476, 83 *L.Ed.*2d at 468. Nor does it matter whether there was judge or jury mistake. *Powell* firmly established that point by stating:

> We also reject, as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake.... Courts have always resisted inquiring into a jury's thought processes.... [T]hrough this deference

the jury brings to the criminal process, in addition to the collective judgement of the community, an element of needed finality.

[*Powell, supra,* 469 *U.S.* at 66–67, 105 *S.Ct.* at 477–78, 83 *L.Ed.*2d at 469–70 (citations omitted) (emphasis added).]

The *Dunn–Powell* rule is based on the nonreviewability of an inconsistent verdict that leads to an acquittal in the face of evidence that was sufficient to convict. The rule is designed to eliminate just the kind of extensive speculation engaged in by the Court today in an attempt to justify its results. The *Powell* sufficiency-of-the-evidence standard to be applied by trial and appellate courts is a much better protective mechanism than the speculative approach applied by the Court today in order to reach a certain result. The Court's speculative approach, is not only bad law, but is contrary to the teachings of this Court to avoid speculations about jury verdicts. *State v. Harmon,* 104 *N.J.* 189, 216, 516 *A.*2d 1047 (1986); *State v. Grunow,* 102 *N.J.* 133, 148, 506 *A.*2d 708 (1986).

Accordingly, I would adopt the *Dunn–Powell* rule and hold that an inconsistent verdict in a compound crime case does not invalidate an otherwise valid conviction that is supported by sufficient evidence. I conclude that based on the sufficiency-of-the-evidence standard, the evidence of defendant's guilt as an accomplice was overwhelming. Indeed, the majority agrees that based on the sufficiency-of-the-evidence standard, "the jury might well have convicted the defendant of aggravated arson as an accomplice." *Grey, supra,* 147 *N.J.* at 16, 685 *A.*2d at 929.

I concur with the Court's holding that in the future, trial courts should instruct juries in compound-felony cases that the jury must first convict on the predicate felony before convicting on the compound offense. The purpose of such an instruction is to diminish the possibility of inconsistent verdicts. As a practical matter, the additional instruction was given in the present case because the jury was told that one of the elements of the compound offense required establishment of the predicate felony. The jury was also instructed that unless all of the elements of the

compound offense have been established beyond a reasonable doubt, the jury may not convict on the compound offense.

I would affirm the judgment of the Appellate Division.

POLLOCK and GARIBALDI, JJ., join in this opinion.

POLLOCK, GARIBALDI and COLEMAN, JJ., concur in part; dissent in part.

*For reversal and remandment*—Chief Justice PORITZ, and Justices HANDLER, O'HERN and STEIN—4.