213 N.J. Super. 576 (1986)
517 A.2d 1226
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT SCHMIDT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 1986.
Decided November 17, 1986.
*578 Before Judges FURMAN, DREIER and STERN.
Mark P. Denbeaux argued the cause on behalf of appellant.
John J. Scaliti, Deputy Attorney General, argued the cause on behalf of respondent (W. Cary Edwards, Attorney General, attorney; Jay Hindman, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by STERN, J.A.D.
The principal issue on this appeal relates to the jurisdiction of New Jersey to prosecute a person outside the state for possessory offenses occurring within the state.
Defendant and codefendants Kahn, Athan and Whittaker were indicted for possession of cocaine, contrary to N.J.S.A. 24:21-20(a)(1) (count one); possession of cocaine with intent to distribute, contrary to N.J.S.A. 24:21-19(a)(1) (count two); possession of cocaine in an amount of one ounce or more with at least 3.5 grams of pure free base, contrary to N.J.S.A. 24:21-20(a)(2) (count three); and possession of the pure free base cocaine with intent to distribute, contrary to N.J.S.A. 24:21-19(a) and (b)(2) (count four). These possessory offenses were all alleged to have occurred in Edison, Middlesex County on April 28, 1984. Defendant, the three codefendants indicted in counts one through four and defendant's wife were also charged with conspiracy to distribute and/or possess with intent to distribute cocaine "on or between the 1st day of April and the 28th day of April 1984" in Edison and Woodbridge, Middlesex County, contrary to N.J.S.A. 24:21-19(a)(1), N.J.S.A. 2C:5-2 and N.J.S.A. 24:21-24 (count five).
Tried by a jury together with codefendant Whittaker, defendant was convicted on all five counts. The court merged counts *579 one through three and five into count four "for purposes of sentencing" and committed defendant to the custody of the Commissioner of Corrections for 20 years with five years to be served before parole eligibility. See N.J.S.A. 2C:43-1b; 24:21-19(b)(2). A $5,000 fine and $25 penalty were also imposed. Defendant appeals and argues:
POINT I THE INDICTMENT WAS BASED UPON INSUFFICIENT EVIDENCE.
POINT II DEFENDANT WAS DENIED A MEANINGFUL DECISION ON HIS MOTION TO SUPPRESS EVIDENCE.
POINT III THE DEFENDANT DID NOT RECEIVE A FAIR TRIAL.
POINT IV THE POST TRIAL MOTIONS SHOULD HAVE BEEN GRANTED.
POINT V PUBLIC POLICY REQUIRES A RE-EXAMINATION OF STATE V. BEGYN, [sic] 34 N.J. 35 1961. (Not Raised Below).
POINT VI THE SENTENCE WAS EXCESSIVE.
On the evening of April 28, 1984 Trooper Charles Atkinson stopped a 1984 Ford with Florida plates being driven at between 75 and 80 m.p.h. by Athan in which Whittaker was riding as a passenger, on the New Jersey Turnpike.
After stopping the vehicle, Trooper Atkins determined that the vehicle had been rented from the Hertz Company in the name of defendant's wife. The trooper observed two cartons of untaxed cigarettes in the front seat of the vehicle and an open beer can on the passenger side floor. Both occupants were then directed to get out of the car, as the trooper intended to arrest both men for the open container and cigarettes. A pat-down search for weapons revealed a small quantity of marijuana on Athan. After the men were placed in the patrol car, a check of the interior of the vehicle revealed a locked glove compartment. When asked what was in the compartment, both Whittaker and Athan responded that they did not know and that it had been locked since they got the car. Athan then gave the trooper consent to open the glove compartment and Whittaker gave him the key. When it was opened a bag containing cocaine, later determined to be partially pure free *580 base, was found. Both men were then arrested for possession of the cocaine.
At the police station, Detective Maopica of the State Police questioned Athan. Maopica told Athan that, because one-half pound of cocaine was in the vehicle he was driving, he would be "tied up in jail for a while" unless he cooperated with the police.
Athan agreed to cooperate and told investigators that defendant had hired Whittaker and him to transport cocaine to New York. According to Athan, who testified at the trial, the cocaine was to be transported to codefendant Kahn's house on Long Island. On the night before Whittaker and he left for New York, Athan went to Tampa airport with defendant and his wife where defendant rented the car in her name. Athan stated that after picking up the car, defendant and he went back to defendant's trailer home from which defendant obtained a bag of cocaine which Athan put into the glove compartment.
After being arrested and agreeing to cooperate, Athan, with the assistance of Detective Maopica and some others, telephoned defendant who had flown to New York where he was staying with codefendant Kahn. Athan told defendant (with the police monitoring) that the car had broken down on the Turnpike and was disabled with a transmission problem in a service area. They discussed contacting Hertz, and defendant apparently endeavored to do so unsuccessfully. When defendant called Athan back at the number given, Athan asked if he should call the highway patrol, and defendant said no. Athan reported that he thought the highway patrol was "coming out." According to Detective Maopica, defendant sounded "excited" by the suggestion.
Defendant then stated that he would drive to New Jersey and pick up Athan and Whittaker at the service area on the Turnpike. He arrived about two hours later at the area where Athan and the car had been taken by the police. The police had rigged the car not to work. Detective Maopica was dressed in *581 mechanic's clothes, and other troopers were standing close by to arrest defendant. When defendant arrived at the scene with Kahn, he said a few words of greetings to Athan and unsuccessfully tried to start the car. Defendant indicated that the car should be abandoned and opened the trunk to transfer the luggage into Kahn's car. At that time defendant did not appear concerned about cocaine or contents of the glove compartment. Both Kahn and Schmidt were then arrested.
In exchange for his cooperation and his agreement to testify against Schmidt at trial, Athan pleaded guilty to possession of cocaine with intent to distribute and received a noncustodial probationary sentence.
Defendant testified on his own behalf. According to defendant, he and his wife lived in Tampa, Florida where defendant was in the business of buying old or damaged motor vehicles, reconditioning and repairing them, and selling them for a profit. Defendant travelled all over the United States to pick up trucks, cars and vans to recondition and sell.
Defendant met Athan through Terry Burton who was doing some work for defendant. In exchange for the work, defendant was to deliver a van to Burton. According to defendant, he hired Athan to drive to New York in the rental car with codefendant Whittaker. Once in New York, Athan and Whittaker were to drop off the rental car, pick up two vans and drive them back to Florida.
According to defendant, Athan volunteered to make the trip as a second driver, claiming to need the money. Athan was to return to Florida with a second vehicle to be obtained in New York.
Defendant claimed that his wife rented the car in her name because she worked for Delta Airlines and received a discount. Defendant also claimed that he flew to New York because he flies free on Delta as a result of his wife's employment.
Defendant denied that he took Athan back to his trailer after picking up the rental car and denied having cocaine in his *582 mobile home. According to defendant, Athan had previously been to his trailer and was therefore familiar with it. Defendant also testified that he and his wife had rented the trailer to tenants who were living there during April 1984 immediately prior to the events alleged in the indictment, and that he and his wife were living on a boat.
Detective Ronald Dixon testified as an expert that one-half pound of cocaine was most likely intended for distribution and sale. He further testified that rental cars are commonly used for transportation of drugs interstate since they prevent tracing ownership and because rental cars prevent seizure of the drug transporting vehicle.

A
Defendant attacks the sufficiency of the evidence before the grand jury and the assistant prosecutor's recitation of the law concerning the concept of possession. Trooper Atkinson was the sole witness before the grand jury. He advised the jury of Athan's cooperation, Athan's report that the car was rented in the name of Mrs. Schmidt, Athan's call to defendant and their conversations, and defendant's arrival in New Jersey. The trooper, who had been involved in many drug-related arrests, offered his opinion that defendant had been involved in an activity resulting from a prior agreement to transport drugs to New York.
The prosecutor then presented to the grand jury for its "consideration" the possessory offenses against Athan and Whittaker and a conspiracy allegation against Athan, Whittaker, Kahn and defendant. After some discussion, the following colloquy occurred:
A GRAND JUROR: ... Can you convict two men on Long Island with distribution and not the two men in the car?
[PROSECUTOR]: You mean can you charge the charges that I laid out for you for possession and possession with intent to distribute for the two people arrested in the car? They were Whittaker and Athan. The two people in Long Island along with the two people in the car are charged with conspiracy. All four of them are charged with conspiracy.

*583 I would add at this point if you want you could consider, based upon the evidence you have heard, there is no formal charge, you could consider including Carolyn Schmidt in the conspiracy count.
A GRAND JUROR: All four conspired to have it transported. The two men on Long Island were the actual ones who were distributing it. It seems to me the charge for them would be the charge for distribution.
[PROSECUTOR]: Do you want to consider the additional charge of possession with intent to distribute against the two guys in Long Island? You know what possession with intent to distribute, the definition is. You may have had defined actual constructive possession. Let me read you that statute again that would pertain to those two people in Long Island. Let me read you that.
Actual or constructive. Your question raises the issue of constructive possession. There isn't actual possession by the people in Long Island because they were in Long Island at the time this stuff is being transported.
A GRAND JUROR: Wasn't it their car?
[PROSECUTOR]: Actual possession is like your wallet in your pocket, you are actually in possession of it. Constructive possession is say, the T.V. set at home, I don't have it now. I am not in actual possession of it. It is my T.V. in my house.
If you feel, based on the testimony you heard, there was constructive possession by the two people in Long Island because it was transported to them, you could bring that charge against those individuals, also.
We reject defendant's attack on the indictment. As recently stated by the Supreme Court in State v. New Jersey Trade Waste Ass'n, 96 N.J. 8, 18-19 (1984):
Whether an indictment should be dismissed or quashed lies within the discretion of the trial court. Such discretion should not be exercised except on `the clearest and plainest ground' and an indictment should stand `unless it is palpably defective.' State v. Weleck, 10 N.J. 355, 364 (1952) (quoting State v. Davidson, 116 N.J.L. 325, 328 (Sup.Ct. 1936), and State v. Russo, 6 N.J. Super. 250, 254 (App.Div. 1950)); State v. Porro, 175 N.J. Super. 49, 51 (App.Div. 1980). Similarly, if an indictment alleges all the essential facts of the crime, the charge is sufficiently stated and the indictment should not be dismissed unless its insufficiency is `palpable.' See State v. LaFera, 35 N.J. 75, 81 (1961); see generally R. 3:7-3 (requiring a written statement of the essential facts constituting the crime charged).
See also State v. LeFurge, 101 N.J. 404 (1986); State v. Bennett, 194 N.J. Super. 231, 233-234 (App.Div. 1984). There is no suggestion that the entire colloquy between the prosecutor and the grand jury was not recorded, and there appears no indication that the prosecutor requested an indictment on charges which the grand jury was unwilling to return or otherwise improperly influenced the jurors. See R. 3:6-6. See *584 also State v. Thrunk, 157 N.J. Super. 265, 277-278 (App.Div. 1978); State v. Schamberg, 146 N.J. Super. 559 (App.Div.), certif. den. 75 N.J. 10 (1977); State v. Hart, 139 N.J. Super. 565 (App.Div. 1976). Moreover, the presentation of hearsay testimony through Trooper Atkinson does not require dismissal of the indictment. An indictment may be based largely or wholly on hearsay and other evidence which may not be legally competent or admissible at the plenary trial. See e.g., State v. Bennett, supra, 194 N.J. Super. at 234; State v. Thrunk, supra, 157 N.J. Super. at 278; State v. Ferrante, 111 N.J. Super. 299, 304-306 (App.Div. 1970); cf. State v. LeFurge, supra. The prosecutor's instructions to the grand jury on constructive possession and on the elements of possession in this state by an individual outside New Jersey could be deemed incomplete and perhaps imprecise, but not incorrect. However, by its very nature the grand jury does not consider an adversarial presentation, and the instructions are not made after consideration of the views of the defense. Adversarial proceedings are reserved for trial. Moreover, given the conspiracy allegation involving possession by codefendants in the state, and given the verdict of the trial jury on the conspiracy and possession counts, we conclude that the statements by the prosecutor do not warrant dismissal of the indictment. Cf. United States v. Mechanik, ___ U.S. ___, 106 S.Ct. 938, 89 L.Ed.2d 50, (1986); State v. Lee, 211 N.J. Super. 590 (App.Div. 1986).[1]

B
Defendant contends that he was entitled to a judgment of acquittal. He argues that there are no cases in this State *585 "wherein possession has been found to exist when the alleged possessor is not actually present." Defendant asserts that the evidence does not warrant a finding of guilt on the possessory offenses on a basis of either actual or constructive possession by defendant. Defendant further contends that there was no evidence of any agreement by him in New Jersey and no agreement by him to do anything in this State.[2]
Absent a conspiracy or accomplice liability, we do not have to address defendant's contention that someone outside New Jersey cannot himself constructively possess in this state. Defendant's argument must fall, under the circumstances of this case, in light of N.J.S.A. 2C:1-3 which provides
a. Except as otherwise provided in this section, a person may be convicted under the law of this State of an offense committed by his own conduct or the conduct of another for which he is legally accountable if:
(1) Either the conduct which is an element of the offense or the result which is such an element occurs within this State;
...
(3) Conduct occurring outside the State is sufficient under the law of this State to constitute a conspiracy to commit an offense within the State and an overt act in furtherance of such conspiracy occurs within the State;
(4) Conduct occurring within the State establishes complicity in the commission of, or an attempt, or conspiracy to commit, an offense in another jurisdiction which also is an offense under the law of this State; .... [Emphasis added].
Pursuant to N.J.S.A. 2C:2-6a "A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both." Under N.J.S.A. 2C:2-6b:
"A person is legally accountable for the conduct of another person when ...
(3) He is an accomplice of such other person in the commission of an offense; or

*586 (4) He is engaged in a conspiracy with such other person.
N.J.S.A. 2C:5-2 defines conspiratorial liability, and N.J.S.A. 2C:2-6c defines accomplice liability. See also II Commentary, Final Report of the New Jersey Criminal Law Revision Commission (1971) at 5-6, where it is stated:
2. The offense may, under § 2C:1-3a, be based upon either the person's own conduct or the conduct of another for which he is legally accountable under § 2C:2-6. Under the Code, if the offense is committed wholly or partly within this State the accomplice is liable here even though his acts took place entirely outside the state. This follows the law found in many state statutes. MPC T.D. 5, p. 4 (1956). It would, however, expand liability somewhat from that found in our cases.
........
Under the Code, the procurer would be legally accountable for the acts of the person within the State. There is no longer any reason to distinguish between various classes of accomplices, particularly based upon theories of `constructive presence,' which were thought to be necessary to find the defendant within the state where the crime was `committed.' See State v. LaFera, 35 N.J. 75, 89 (1961). [Id. at 5-6].
See also id. at 6-7; N.J.S.A. 2C:1-5b (applying subtitle 1 of the Code to offenses embodied in other statutes).
We recognize that the possessory charges may have been tried against defendant on the basis of constructive possession from outside the State, that the judge charged the jury on actual and constructive possession and that he did not specifically instruct the jury on the impact of the doctrine of conspiracy as it related to the possession counts. However, the court charged the jury at length on the nature and elements of conspiratorial liability and what the State had to prove beyond a reasonable doubt in order to sustain a conviction for conspiracy. Our review of the record convinces us, given the conspiracy conviction of both defendant and Whittaker who was in the car and convicted of possession in New Jersey, that defendant's convictions for the possession are unassailable. He, as a conspirator, was responsible for the conduct of the individuals who actually possessed the cocaine in this state. Moreover, defendant has no claim of lack of notice regarding prosecution of the possessory charges as a result of conspiratorial liability. See *587 State v. LeFurge, supra, 101 N.J. at 414-423[3]; N.J.S.A. 2C:1-8d(2). Cf. State v. Talley, 94 N.J. 385, 391-394 (1983); State v. Hakim, 205 N.J. Super. 385, 388-389 (App.Div. 1985).

C
We conclude that the other contentions raised by defendant are clearly without merit. R. 2:11-3(e)(2). Accordingly, the judgment of conviction and sentence thereon are affirmed.
NOTES
[1] We recognize that Mechanik deals with the violation of a federal rule and that there is a state constitutional right of indictment. N.J. Const. (1947) Art. I, par. 8. We also recognize that both Mechanik and Lee dealt with procedural irregularities before the grand jury and that this case deals with instructions on the law. However, as noted above, while the instructions may be deemed both incomplete and imprecise, we are not dealing with the situation where they were incorrect.
[2] The State did not claim that defendant possessed drugs as a result of his trip here after the telephone call. At oral argument the State acknowledged that the conviction could not be premised on the defendant's own acts in this State as a result of the telephone call to him which was made after the police intervention. In any event, the drugs were no longer in the car but were rather in police custody. Moreover, defendant does not contend that a person cannot possess a controlled dangerous substance with intent to distribute in this State if he did not intend to distribute in New Jersey.
[3] In State v. LeFurge, defendant was indicted for theft but acquitted thereof and convicted of conspiracy charged as a lesser included offense. The Supreme Court upheld the conviction notwithstanding constitutional claims of lack of notice and right to indictment.